IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

RIVIERA DRILLING & EXPLORATION COMPANY, a
Texas corporation,

      Plaintiff,

v.

GUNNISON ENERGY CORPORATION, a Delaware
corporation,
SG INTERESTS I, LTD, a Texas limited partnership, and
SG INTERESTS VII, LTD. a Texas limited partnership,

      Defendants.

## COMPLAINT

Riviera Drilling & Exploration Company ("Riviera"), by its attorneys, states the

following Complaint against Gunnison Energy Corporation ("Gunnison Energy"), SG Interests I,

Ltd. ("SG I") and SG Interests VII, Ltd. ("SG VII"):

## INTRODUCTION

1.     This action involves the Defendants' activities in restraining the production,

gathering, processing, transportation and sale of natural gas from the Ragged Mountain Field and

adjacent areas in Delta and Gunnison Counties, Colorado (the "Ragged Mountain Area") in

violation of sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2, common carrier

obligations under 30 U.S.C. § 185(r) and common law, and the statutory and common law of the

State of Colorado.

2.     Defendants own and control a facility that is essential for gathering, processing

and transporting natural gas from the Ragged Mountain Area.  Defendants have unlawfully

restrained competitors' access to that facility to drive competitors out of the markets for the production and sale of natural from the Ragged Mountain Area and to increase their own economic power in those markets.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over this matter pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15(a) and 28 U.S.C. §§ 1331, 1337(a), and this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this District under Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15(a), 22, and under 28 U.S.C. § 1391 because the Defendants transact business and are found within this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

5.      Plaintiff Riviera is a Texas corporation authorized to do business in the State of Colorado.  Riviera is engaged in the production and sale of natural gas from wells in the Ragged Mountain Area for use outside the State of Colorado.

6.      Defendant Gunnison Energy is a Delaware corporation authorized to do business in the State of Colorado.  Gunnison Energy is engaged in the production, gathering, processing, transportation and sale of natural gas from the Ragged Mountain Area for use outside the State of Colorado.

7.      Defendant SG I is a Texas limited partnership authorized to do business in the State of Colorado.  SG I's office address is 909 Fannin, Suite 2600, Houston, Texas.  SG I is

engaged in the production, gathering and sale of natural gas from the Ragged Mountain Area for use outside the State of Colorado.

8.      Defendant SG VII ("SG VII") is a Texas limited partnership authorized to do business in the State of Colorado.  SG VII's office address is 909 Fannin, Suite 2600, Houston, Texas.  SG VII is engaged in the production, gathering, processing, transportation and sale of natural gas from the Ragged Mountain Area for use outside the State of Colorado.

9.      Upon information and belief, SG I and SG VII are affiliated partnerships that share a common general partner and common ownership.

## CO-CONSPIRATORS

10.     Russell D. Gordy ("Gordy") is an individual residing in Houston, Texas.  Gordy is an owner of Gordy Oil Company, which is the general partner of SG I and a general partner of SG VII.  Gordy also is an owner of Gordy Gas Corporation, which is the general partner of Rock Creek Ranch I, Ltd. ("Rock Creek"), a Texas limited partnership.  Rock Creek's office address is 909 Fannin, Suite 2600, Houston, Texas.  Gordy personally participated in the activities described herein on behalf of SG I, SG VII and Rock Creek.

11.     Robert H. Guinn, II ("Guinn") is an individual residing in Houston, Texas.  Guinn is a vice president of SG I, SG VII and Rock Creek Ranch.  Guinn personally participated in the activities described herein on behalf of SG I, SG VII and Rock Creek.

12.     William Koch ("Koch") is an individual residing in West Palm Beach, Florida.  Koch is an officer and director of Gunnison Energy.  Koch personally participated in the activities described herein on behalf of Gunnison Energy.

13.     M. Brad Robinson ("Robinson") is an individual residing in Denver, Colorado. Robinson is president of Gunnison Energy.  Robinson personally participated in the activities described herein on behalf of Gunnison Energy.

## TRADE AND COMMERCE

14.     Defendants are engaged in, and their activities substantially affect, interstate commerce.  Natural gas produced, gathered, processed and transported from the Ragged Mountain Area is sold and delivered in interstate commerce through, among other locations, the Opal Hub in Southwestern Wyoming.  The Ragged Mountain Area currently is producing more than four million cubic feet (MMcf) of natural gas per day, with anticipated future production of more than 200 MMcf per day.

15.     Gunnison Energy, SG I and SG VII are direct competitors with Riviera in the production and sale of natural gas from the Ragged Mountain Area.

## GENERAL ALLEGATIONS

16.     Natural gas is produced at the "wellhead," where it is collected and delivered through low-pressure gas gathering pipeline systems to processing facilities.  Natural gas includes various hydrocarbons such as propane, butane, etc., which are removed and recovered from natural gas in liquid form through processing and sold separately.  The remaining gas, known as residue gas, is then transported to high-pressure transmission lines for delivery to end users in interstate commerce.

17.     The Ragged Mountain Area is served by a single natural gas gathering system, processing facility and transportation pipeline known collectively as the Ragged Mountain System.  The System delivers natural gas produced from the Ragged Mountain Area to the high-

pressure Rocky Mountain Pipeline for transmission to end users outside the State of Colorado. The System is capable of gathering, processing and transporting up to 20 MMcf of natural gas per day.

18.     Riviera is a family owned business that has produced natural gas in the Ragged Mountain Area since 1983.  Natural gas produced by Riviera has been gathered, processed, transported and sold through the Ragged Mountain System.  In the mid-1980s, Riviera acquired part of an interest in an oil and gas lease entitling it to develop and produce natural gas from property owned by the McIntyre Livestock Corporation (the "McIntyre Lease") in the Ragged Mountain Area.

19.      Sometime in the late 1990s and early 2000s, the Ragged Mountain Area became an area of interest for the production of natural gas from coal.  For some time, Gunnison Energy actively competed against SG I and SG VII for mineral leases entitling them to develop and produce natural gas in the Area.

20.     In January 2001, SG VII acquired the remaining interest in the McIntyre Lease not owned by Riviera, entitling SG VII to develop and produce natural gas from property owned by the McIntyre Livestock Corporation in the Ragged Mountain Area.

21.     In July 2005, Gunnison Energy and SG VII (through affiliated entities) purchased the Ragged Mountain System.  Gunnison Energy and SG I also purchased the oil and gas leases owned by the previous owners of the System in the Ragged Mountain Area, and Gunnison Energy and SG I own undivided interests in those leases.

22.     At or about the same time, Gunnison Energy entered into an agreement with SG I for an area of mutual interest within the Ragged Mountain Area.  That agreement provided each

of them with an interest in oil and gas leases acquired by the other in the future.  As a result of that agreement, Gunnison Energy and SG I have no longer competed against each for mineral leases in the area of mutual interest, including bidding at open auctions for leases of mineral interests on federal lands in that area.  Instead, SG I has participated at those auctions and has successfully obtained all federal leases made available within the area of mutual interest.  Shortly after obtaining those leases, SG I has assigned an interest in them to Gunnison Energy.

23.     Since acquiring the Ragged Mountain System, Gunnison Energy has added a lateral pipeline known as the Sheep Gas Lateral Pipeline to the System, and SG I has added a lateral pipeline known as the Henderson Lateral Pipeline to the System to accommodate additional natural gas production by them within the Ragged Mountain Area.

24.     As a result of the acquisition of the Ragged Mountain System and subsequent additions made by them to the System, Defendants, by contract and combination, own and control 100% of the market for natural gas gathering, processing and transportation in the Ragged Mountain Area.

25.     Pursuant to agreement between Gunnison and SG VII, Gunnison Energy operates and controls access to the System, and SG I and SG VII have acquiesced in or otherwise agreed to the terms and conditions established by Gunnison Energy for access to the System.

26.     The Ragged Mountain System is essential to Riviera and other producers' ability to conduct business in and compete for the production and sale of natural gas from the Ragged Mountain Area.  Defendants have the ability and capacity to provide reasonable access to the System.  Pursuant to 30 U.S.C. § 185(r) and 36 CFR § 251.56, special use permits issued by the United States Forest Service for operation of the System on federal lands require the System to

6

be operated as a common carrier and to "accept, convey, transport, or purchase without discrimination all oil or gas delivered" to it.  Defendants have further represented and held themselves out to the public as being common carriers with respect to operation of the System.

27.     There is no practicable or reasonable means of duplicating the Ragged Mountain System because of capital costs and regulatory barriers associated with the construction and operation of gathering systems, processing facilities and transportation pipelines in the Ragged Mountain Area.  Those barriers include the need to obtain special use and other permits from, among other agencies, the United States Forest Service, the Bureau of Land Management, the U.S. Environmental Protection Agency, the Army Corps of Engineers, the State of Colorado and Gunnison County, Colorado.  Potential competitors are prevented from entry into the Ragged Mountain Area by those same factors.

28.     Following the acquisition of the Ragged Mountain System in 2005, Gunnison Energy, as operator of the System, entered into a short term natural gas purchase agreement with Riviera in which it purchased gas from Riviera at $0.785 per MMBtu and gathered, processed, transported and sold Riviera's gas through the Ragged Mountain System.  That agreement was terminable on five days written notice.

29.     On or about April 7, 2006, the McIntyre Livestock Corporation conveyed its interests in the real property and reserved mineral interests owned by it in the Ragged Mountain Area, including those oil and gas interests subject to the McIntyre Lease, to Rock Creek.  Upon information and belief, Rock Creek, SG I and SG VII are affiliated entities that share common ownership.

30.     Riviera sent a letter to Rock Creek on August 17, 2006, expressing an interest in developing one or more wells on the property purchased by Rock Creek and subject to Riviera's interest in the McIntyre Lease.  Riviera requested a meeting to discuss drilling locations, pipeline access and scheduling of well development activities.  Rock Creek did not respond to Riviera's letter, and Riviera reiterated its interest in developing one or more wells on the property to Rock Creek in May 2007.

31.     Rock Creek responded that Riviera's interest in the McIntyre Lease had lapsed or otherwise terminated because of Riviera's alleged failure to explore and develop its interest.  On October 1, 2007, Rock Creek filed a lawsuit in Gunnison County, Colorado, seeking to have Riviera's interest in the McIntyre Lease declared lapsed or terminated because of Riviera's alleged failure to explore and develop its interest.

32.     Beginning at or about the same time in October 2007, Defendants -- by contract, combination and conspiracy -- have refused Riviera access to the Ragged Mountain System except on discriminatory, non-competitive terms.  Among other things, Defendants have conditioned Riviera's access to the System on the payment of prices in excess of those available in competitive markets and on compliance with operating standards that Riviera has not been required to meet in the past and that Defendants do not require for the gathering, processing and transportation of natural gas produced by them.

33.     By letter dated September 17, 2007, Gunnison Energy informed Riviera that it was terminating its short term natural gas purchase agreement with Riviera effective October 1, 2007, and that it would begin charging Riviera $1.52 MMBtu to transport natural gas through the Ragged Mountain System.  Gunnison Energy also informed Riviera that it would require each of

Riviera's wells to meet carbon dioxide limitations for the Rocky Mountain Pipeline, which would require that individual scrubbers be placed on Riviera's wells, rather than allowing those limitations to be satisfied through the blending of natural gas from all of Riviera's wells as in the past.

34.     In some cases, Defendants have refused to provide Riviera with terms and conditions for access to the Ragged Mountain System for new wells, thereby preventing development of new production because of the economic uncertainty of the cost of access to markets.  Defendants also have required separate transportation agreements for the use of lateral pipelines to the System.

35.     In October 2007, Gunnison Energy ordered that Riviera's wells be shut in retaliation for Riviera's successful efforts to have the United States Forest Service impose a requirement that the Sheep Gas Lateral Pipeline to the Ragged Mountain System be subject to common carrier status.

36.     Defendants also have engaged in the following anticompetitive and wrongful conduct:

a.     Representatives of Gunnison Energy, SG I and SG VII met in Houston in 2006 and discussed Riviera's presence in the Ragged Mountain Area.  Guinn indicated that the SG entities would "take care of Riviera" and otherwise indicated that they would force Riviera out of the market.  Representatives of SG I also have stated that Riviera's natural gas would never be allowed to flow through the Ragged Mountain System.

b.     Gunnison Energy and SG I have entered into an agreement for the construction of the Bull Mountain Pipeline and associated processing facility.  The Bull

Mountain Pipeline is a 20-inch, 25-mile pipeline designed to transport current and future natural gas production from the Ragged Mountain Area to interstate commerce. The Bull Mountain Pipeline will be capable of delivering approximately 375 MMcf of natural gas per day into interstate commerce. The Bull Mountain Pipeline is not expected to be completed for another year. Construction of the Bull Mountain Pipeline will further increase Gunnison Energy and SG I's ability to exclude competition from and control prices for the markets for the production, gathering, processing, transportation and sale of natural gas from the Ragged Mountain Area. Because of the capacity of and regulatory barriers associated with the Bull Mountain Pipeline, it will further foreclose entry of competition for the production, gathering, processing, transportation and sale of natural gas from the Ragged Mountain Area.

        c.      When SG I's competitors have offered to lease mineral interests in the Ragged Mountain Area, representatives of SG I have approached the mineral interest owners and discouraged them from entering into leases with SG I's competitors by telling them that SG I's competitiors do not have a way to transport natural gas to market.

        37.     As a result of Defendants' activities, Riviera has had to shut in its eight producing wells, thereby curtailing production of approximately 300-800 Mcf of natural gas per day from the Ragged Mountain Area for sale in interstate commerce. Riviera also has been prevented from connecting three wells capable of producing an estimated 75 Mcf per day each. Riviera also has been prevented from re-working eight existing wells and developing new wells for the production of additional natural gas from the Ragged Mountain Area for sale in interstate commerce.

38.     A readily available market has existed for the sale of natural gas produced by Riviera from the Ragged Mountain area, and natural gas brokers and other purchasers have been and continue to be ready, willing and able to enter into contracts for such gas.

39.     In March 2008, Riviera entered into an Asset Purchase and Sale Agreement with Buccaneer Energy (USA) Inc. ("Buccaneer"), in which Riviera agreed to sublease its leases and other oil and gas assets in the Ragged Mountain Area to Buccaneer and agreed to give Buccaneer the option to purchase those assets.  Under the terms of the agreement, Buccaneer is obligated to drill four wells on Riviera's leases within two years.  Buccaneer's option to purchase Riviera's assets and its obligation to drill four wells are dependent on Buccaneer's ability to negotiate a reasonable agreement for the gathering, processing and transportation of natural gas from the Ragged Mountain Area.

40.     After Riviera indicated to Defendants that it would acquiesce in the new conditions imposed by them for access to the Ragged Mountain System and after Buccaneer announced its potential entry into the market, Gunnison Energy abruptly increased the cost to transport natural gas through the System to $3.92 MMBtu.  Gunnison Energy has refused to provide information about the costs and other economic factors forming the basis for those charges, which reflect monopolistic pricing.  The effect of that price increase and other conditions imposed by Gunnison Energy has been to further render access to the System unreasonable and uneconomic, thereby making Buccaneer's performance under the contract impossible or more difficult and further preventing Riviera from producing and selling natural gas from the Ragged Mountain Area.

41.     Defendants' conduct has had, and is continuing to have, the following effects, among others, within the relevant markets:

      a.     Competition in the markets for producing, gathering, processing, transporting and selling natural gas has been reduced or eliminated,

      b.     Consumers of gas gathering, processing and transportation, such as Riviera, Buccaneer and other oil and gas lessees, have been subjected to increased prices and reduced output for those services,

      c.     Defendants have acquired and exercised the power to exclude competition and control prices for gathering, processing and transporting natural gas,

      d.     Defendants have used the power to exclude competition and control prices for gathering, processing and transporting natural gas to acquire the power to exclude competition and/or control prices for the production and sale of natural gas, and

      e.     Natural gas production and sales have been reduced.

## RELEVANT MARKETS

42.     The Ragged Mountain Area constitutes the area of effective competition and is the relevant geographic market.  The term "Ragged Mountain Area" as used in this Complaint refers to that area encompassed within Townships 10 South to 12 South and Ranges 89 West to 91 West.

43.     There is no practical substitute for the production, gathering, processing, transportation and sale of natural gas, which constitute the relevant product markets.

## FIRST CLAIM FOR RELIEF
### (Refusal to Deal in Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1)

44.     Plaintiff realleges and incorporates all previous paragraphs of this Complaint.

45.    Defendants have exclusive ownership and control over the Ragged Mountain System, which is essential to effective competition for the production and sale of natural gas from the Ragged Mountain Area, and have the ability to control prices and exclude competition in the Ragged Mountain Area for the production, gathering, processing, transportation and sale of natural gas.

46.    Defendants have contracted, combined and conspired to restrain competition in the relevant markets.

47.    Defendants have taken steps in furtherance of their contract, combination and conspiracy by, among other things, refusing to deal with, or to deal only on specific terms with, competitors and consumers of natural gas gathering, processing and transportation services so as to deny reasonable access to the Ragged Mountain System.

48.    Defendants' conduct has violated and is continuing to violate Section 1 of the Sherman Act, 15 U.S.C. § 1.

49.    As a result of Defendants' conduct, Riviera has suffered and continues to suffer injury to its business or property.

## SECOND CLAIM FOR RELIEF
### (Conspiracy to Monopolize in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2)

50.    Plaintiff realleges and incorporates all previous paragraphs of this Complaint.

51.    Defendants have combined and conspired to monopolize the markets for the production, gathering, processing, transportation and sale of natural gas in the Ragged Mountain Area.

52.    Defendants have taken steps in furtherance of their combination and conspiracy by, among other things,

      a.      acquiring 100% ownership and control over the Ragged Mountain System;

      b.      refusing to deal with, or to deal only on specific terms with, competitors and consumers of natural gas gathering, processing and transportation services so as to deny reasonable access to the Ragged Mountain System;

      c.      refusing to provide terms and conditions of access to the Ragged Mountain System for new wells, thereby preventing development of new production because of the economic uncertainty of the cost of access to markets;

      d.      allowing themselves access to the Ragged Mountain System on terms and conditions more favorable than those available to competitors; and

      e.      entering into agreements to share in each others' leases of mineral interests for the production of natural gas in the Ragged Mountain Area.

53.      As a result of their conduct, Defendants have exclusive ownership and control over the Ragged Mountain System, which is essential to effective competition for the production and sale of natural gas from the Ragged Mountain Area, and have the ability to control prices and exclude competition in the Ragged Mountain Area for the gathering, processing and transportation of natural gas.  Defendants also have created a dangerous probability of success in obtaining the ability to control prices and exclude competition in the Ragged Mountain Area for the production and sale of natural gas.

54.      Defendants' conduct was undertaken with the specific intent to monopolize the production, gathering, processing, transportation and sale of natural gas from the Ragged Mountain Area.

55.     Defendants' conduct has violated and is continuing to violate Section 2 of the Sherman Act, 15 U.S.C. § 2.

56.     As a result of Defendants' conduct, Riviera has suffered and continues to suffer injury to its business or property.

### THIRD CLAIM FOR RELIEF
**(Restraint of Trade in Violation of the Colorado Antitrust Act, C.R.S. § 6-4-104)**

57.     Plaintiff realleges and incorporates all previous paragraphs of this Complaint.

58.     Defendants' conduct has violated and is continuing to violate C.R.S. § 6-4-104.

59.     As a result of Defendants' conduct, Riviera has suffered and continues to suffer injury to its business or property.

### FOURTH CLAIM FOR RELIEF
**(Conspiracy to Monopolize in Violation of the Colorado Antitrust Act, C.R.S. § 6-4-105)**

60.     Plaintiff realleges and incorporates all previous paragraphs of this Complaint.

61.     Defendants' conduct has violated and is continuing to violate C.R.S. § 6-4-105.

62.     As a result of Defendants' conduct, Riviera has suffered and continues to suffer injury to its business or property.

### FIFTH CLAIM FOR RELIEF
**(Denial of Common Carrier Access)**

63.     Plaintiff realleges and incorporates all previous paragraphs of this Complaint.

64.     Defendants were and continue to be obligated to operate the Ragged Mountain System as a common carrier pursuant to statutory and common law and to accept, convey, transport, or purchase without discrimination all oil or gas delivered to the System.  Riviera is a member of the class of persons and entities for whose benefit common carrier status was conferred.

65.     Defendants have refused and continue to refuse to operate the Ragged Mountain System as a common carrier and to accept, convey, transport, or purchase without discrimination all oil or gas delivered to the System.

66.     As a result of Defendants' conduct, Riviera has suffered and continues to suffer injury to its business or property.

## SIXTH CLAIM FOR RELIEF
### (Tortious Interference with Contractual Relationships)

67.     Plaintiff realleges and incorporates all previous paragraphs of this Complaint.

68.     Riviera has a contract with Buccaneer for the sale of Riviera's assets in the Ragged Mountain Area.

69.     Defendants knew or reasonably should have known of Riviera's contract with Buccaneer.

70.     By their conduct, Defendants intentionally interfered and continue to interfere with the performance of Riviera's contract with Buccaneer by making Buccaneer's performance under the contract impossible or more difficult.

71.     Defendants' conduct was and continues to be improper or otherwise wrongful.

72.     Defendants' conduct was and continues to be willful and wanton.

73.     As a result of Defendants' conduct, Riviera has suffered and continues to suffer injury to its business or property.

## SEVENTH CLAIM FOR RELIEF
### (Tortious Interference With Prospective Business Advantage Or Relation)

74.     Plaintiff realleges and incorporates all previous paragraphs of this Complaint.

75.     Riviera had a reasonable likelihood or probability of entering into a contract with natural gas brokers or other purchasers for the sale of natural gas from the Ragged Mountain Area.

76.     Defendants knew or should have known of Riviera's prospective contracts.

77.     By their conduct, Defendants intentionally interfered and continue to interfere with the performance of Riviera's prospective contracts by making performance impossible or more difficult.

78.     Defendants' conduct was and continues to be improper or otherwise wrongful.

79.     Defendants' conduct was and continues to be willful and wanton.

80.     As a result of Defendants' conduct, Riviera has suffered and continues to suffer injury to its business or property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

a.     With respect to Riviera's First Claim for Relief under Section 1 of the Sherman Act, 15 U.S.C. § 1, an award of threefold the amount of damages actually sustained by Riviera, in an amount to be determined at trial, and attorney fees and costs;

b.     With respect to Riviera's Second Claim for Relief under Section 2 of the Sherman Act, 15 U.S.C. § 2,  an award of threefold the amount of damages actually sustained by Riviera, in an amount to be determined at trial, and attorney fees and costs;

c.     With respect to Riviera's Third Claim for Relief under the Colorado Antitrust Act, C.R.S. § 6-4-104, an award of threefold the amount of damages actually sustained by Riviera, in an amount to be determined at trial, and attorney fees and costs;

d.      With respect to Riviera's Fourth Claim for Relief under the Colorado Antitrust Act, C.R.S. § 6-4-105, an award of threefold the amount of damages actually sustained by Riviera, in an amount to be determined at trial, and attorney fees and costs;

e.      With respect to Riviera's Fifth Claim for Relief, an award of damages actually sustained by Riviera, in an amount to be determined at trial.

f.      With respect to Riviera's Sixth Claim for Relief, an award of the amount of damages actually sustained by Riviera, in an amount to be determined at trial, and exemplary damages;

g.      With respect to Riviera's Seventh Claim for Relief, an award of the amount of damages actually sustained by Riviera, in an amount to be determined at trial, and exemplary damages;

h.      For an order enjoining Defendants, preliminarily and permanently, from continuing to violate the antitrust laws, continuing to refuse access as a common carrier and continuing to interfere with Riviera's prospective and actual contracts as set forth herein;

i.      Interest and any other damages, fees and costs to the fullest extent permitted under all applicable law, and

j.      Such other and further relief as this Court deems just and proper, including the forfeiture of all federal oil and gas leases obtained by collusion and the forfeiture of all federal permits for the operation of the Ragged Mountain System and the Bull Mountain Pipeline.

## **JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.

Dated: November 14, 2008.

Respectfully submitted,

*signed original on file at Hill & Robbins, P.C.*

s/Ronald L. Wilcox
s/Jennifer H. Hunt
s/Nathan P. Flynn
Ronald L. Wilcox
Jennifer H. Hunt
Nathan P. Flynn
Hill & Robbins, P.C.
1441 18th Street, Suite 100
Denver, CO  80202
Phone:   (303) 296-8100
Fax:      (303) 296-2388
E-mail:  ronwilcox@hillandrobbins.com
           jhunt@hillandrobbins.com
           nflynn@hillandrobbins.com

Plaintiff's Address:
Riviera Drilling & Exploration Company
1441 N. Mayfair Rd.
Wauwatosa, WI  53226